UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PAUL SANS, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent ) | 2:12-cr-00030-GZS<br>2:14-cv-00062-GZS |

## **RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Paul Sans, pursuant to 28 U.S.C. §2255, seeks to vacate, set aside, or correct his sentence. (Motion, ECF No. 126.) Petitioner pled guilty to four counts of bank robbery and one count of interference with commerce by robbery. (Judgment, ECF No. 118 at 1.) The Court sentenced Petitioner to 180 months of imprisonment on each of the counts, to be served concurrently, followed by three years of supervised release. (*Id.* at 2-3.) Petitioner filed a notice of appeal, but in March 2013, the First Circuit ordered a dismissal pursuant to Fed. R. App. P. 42(b). *United States v. Sans*, No. 13-1250 (1st Cir. Mar. 25, 2013). (Judgment, ECF No. 123.)

In February 2014, Petitioner filed the pending section 2255 motion, in which motion he claims that counsel was ineffective because he failed to engage an expert psychiatrist and pharmacologist, failed to address Petitioner's mental health history adequately, and failed to assert an insanity defense. Petitioner also claims misconduct by the Government and the United States Probation Office for the failure to disclose information about Petitioner's mental health history. The Government moved for summary dismissal. (Response, ECF No. 140 at 1.)

As explained below, following a review of the record and after consideration of the parties' written arguments, the recommendation is that the Court deny Petitioner's section 2255 motion, and dismiss the matter.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

In a seven-count second superseding indictment, the Government charged Petitioner with the robbery of three credit unions, a bank, and a store, on various dates in January and February 2012. (Second Superseding Indictment, ECF No. 67, counts 1, 3, 5, 6, 7.) 18 U.S.C. §§ 1951(a), 2113(a). Through the indictment, the Government also charged Petitioner with conspiracy to commit bank robbery. (*Id.*, count 4).[2]

In August 2012, Petitioner filed a motion for new counsel, but at the hearing on the motion, Petitioner withdrew the motion. (Motion, ECF No. 85; Minute Entry, ECF No. 88; Sealed Tr., ECF No. 136.) In October 2012, Petitioner pled guilty to the five robbery charges. (ECF Nos. 96, 144.) Although the parties did not present the Court with a formal plea agreement, at sentencing, the Court granted the Government's motion to dismiss the conspiracy charge. (Plea Tr., ECF No. 144 at 12-13; Sentencing Tr., ECF No. 137 at 32-33; Judgment, ECF No. 118 at 1.)

In the plea hearing, Petitioner told the Court that the prosecution version of the offenses was true, to Petitioner's personal knowledge. (Plea Tr., ECF No. 144 at 12.) In the written prosecution version, the Government asserted that if the case went to trial, the Government could

---

[1] The factual background is derived in part from the prosecution version, which Petitioner, in his change of plea hearing, stated was true, to his personal knowledge. (Plea Transcript, ECF No. 144 at 12.)

[2] Count 2 charged Petitioner's co-defendant with aiding and abetting bank robbery. Petitioner's co-defendant was also charged in a separate indictment with aiding and abetting the interference with commerce by robbery, and conspiracy to commit bank robbery. (Judgment as to Mattson, ECF No. 107 at 1; also docketed at *United States v. Mattson*, 2:12-cr-00131-GZS, ECF No. 20.) She pled guilty to all of the charges and was sentenced to a term of 50 months of imprisonment on the charges of interference with commerce by robbery and aiding and abetting robbery, and a term of 42 months on the charge of conspiracy to commit robbery, the terms to be served concurrently, followed by three years of supervised release. (*Id.*)

2

prove, through witness testimony, documents and other tangible evidence, and video, that Petitioner committed the charged crimes. (Prosecution Version, ECF No. 95 at 1.) After Petitioner was apprehended by the police, he admitted to the fifth robbery (count 1). (*Id.* at 2.)

The prosecution version described very similar methods used to perpetrate the five robberies; Petitioner wore hooded sweatshirts, a mask, and gloves, and he brandished a BB gun as he demanded money. (*Id.* at 1-3.) In one of the robberies, he told the teller, "no dye pack." (*Id.* at 1.) In one of the credit union robberies, Petitioner asked his co-defendant to call ahead to determine whether the credit union was open. (*Id.* at 2.) Petitioner discarded clothing, shoes, and a gun after fleeing, and he and his co-defendant purchased new clothing, including hooded sweatshirts. (*Id.* at 2-3.)

At the plea colloquy, the Court found Petitioner competent to plead guilty after Petitioner told the Court that he was 30 years old; he had an 11th grade education; he could read and write in English; he was not seeing a physician or mental health worker for any problem; and that although he was taking Elavil for bipolar disorder and a brain injury, the medication did not interfere with his ability to understand the proceedings or make a rational decision. (Plea Tr., ECF No. 144 at 3-5.) In response to the Court's questioning, Petitioner told the Court that he was in fact guilty of the crimes charged; that he had sufficient time to discuss the second superseding indictment with counsel; that counsel had explained the Government's burden of proof and the possible penalties; that he understood his right to a jury trial and the rights attendant to that right; that he understood that his appellate rights would be very limited; and that he had reviewed the prosecution version of the crimes and believed it to be true, to his personal knowledge. (*Id.* at 6-12.) On the basis of the responses of Petitioner and counsel to the Court's questions, the Court found a factual basis for the charged crimes, that Petitioner understood his rights and that there

was a 20-year maximum prison term, that no one had threatened or coerced Petitioner into pleading guilty, and that no one had made Petitioner any promises in exchange for his guilty plea. (*Id.* at 8, 12, 15-17.)

As part of the presentence investigation report, Petitioner acknowledged responsibility for the robberies and said that his drug addiction prompted him to commit the crimes. (Attachment to Government's Response, ECF No. 140-1.) The presentencing investigation report also states that Petitioner received extended in-patient mental health treatment between 1992 and 1995 for escalating behavioral problems, including assaultive behavior toward family members, peers, and classmates, as well as suicidal comments or suicidal ideation. (Revised Presentence Investigation Report at ¶ 93.) Petitioner was placed on a number of medications, including Depakote and lithium. (*Id.*) At the time the presentencing investigation report was completed, Petitioner was prescribed 200 mg of Amitriptyline daily for depression, but he was not prescribed any other medication for a mental health issue. (*Id.* at ¶ 95.) Petitioner acknowledged a lengthy history of polysubstance abuse. (*Id.* at ¶ 96.) In 2007 and 2008, he was diagnosed with opioid dependence; sedative hypnotic anxiolytic dependence; alcohol dependence; cannabis dependence; anxiety disorder, not otherwise specified; and depressive disorder, not otherwise specified. (*Id.* at ¶ 97.) Petitioner received substance abuse treatment, but was removed from one program for non-compliance. (*Id.*) In 2011, Petitioner was court-ordered to complete a residential drug program after his release from jail, but the facility was full and he was never admitted to the program. (*Id.* at ¶ 97A.)

The presentence investigation report lists Petitioner's extensive criminal record, which includes 18 convictions from 1998, when Petitioner was 15 years old, to 2008, when he was 26 years old. (*Id.* at ¶¶ 64-80.) Petitioner's record includes prior convictions for burglary of motor

vehicles; theft; assault; violation of conditions of release, including communicating a death threat to a woman while Petitioner was subject to an order prohibiting contact with the victim; burglary of residences; burglary of a business; aggravated forgery; and conspiracy to possess a narcotic drug with intent to sell. (*Id.*) Petitioner is a career offender, pursuant to U.S.S.G. § 4B1.1, due to a prior crime of violence (a residential burglary) and a controlled substance offense. (Id. at ¶ 60.)

In response to Petitioner's objections to the initial draft of the presentence investigation report, the revised report listed Petitioner's extensive mental health history as one of many factors that, according to Petitioner, warranted a below-guidelines sentence. (Letter, ECF No. 140-2.) Petitioner's sentencing memorandum asserts that the presentence investigation report accurately described the offense conduct. (Sentencing Memorandum, ECF No. 114 at 3.) Petitioner's only objection to the revised report was that, contrary to the report, he asserted that he was not physically violent with or abusive to his co-defendant. (*Id.*) In his sentencing memorandum, Petitioner acknowledges the extensive criminal history set forth in the presentence investigation report, including burglaries, thefts, assaults, and drug charges. (*Id.* at 8.) He asserts that his criminal history "reflects compulsive behavior over which he has little to no control. (*Id.*)

Petitioner reports that he was released from a prior imprisonment in September 2011 and remained drug-free until December 2011, when he began sharing heroin and needles with his co-defendant. (*Id.* at 2.) According to Petitioner, his co-defendant bought a BB gun for Petitioner to use in connection with their anticipated criminal activities, and they committed the five robberies together. (*Id.*) They used the proceeds to buy heroin, clothing, and jewelry and other items, to make bank deposits and to pay for household expenses. (*Id.* at 2-3.)

At the time of sentencing, Petitioner was thirty years old, unmarried, and had no children. (*Id.* at 5.) At age six, Petitioner sustained a brain injury and lost a significant amount of his small

5

intestine due to an accident in which he was a passenger in his grandmother's vehicle when the vehicle was struck by an on-duty police officer. (*Id.*)³ He spent over six months in the hospital and received a significant amount of pain medication. (*Id.*) Petitioner also asserts that Petitioner's mental health issues and treatment began after the car accident, and that he received services and counseling, including inpatient treatment for a suicide attempt at age 10. (*Id.* at 6.) He received extended in-patient treatment, was diagnosed with bipolar and mixed-conduct disorder, and treated with Depakote and lithium. (*Id.* at 6.) Petitioner has a history of substance abuse involving "every kind of drug imaginable," including marijuana, benzodiazepines, opiates, psychedelic drugs. (*Id.* at 7.) Substance abuse treatment was not successful. (*Id.* at 7.)

As a child, Petitioner was emotionally and physically abused by his mother and step-father, and was taken into the custody of the Department of Human Services at age 12. (*Id.* at 5-6.) His step-father evidently was involved in criminal activity. (*Id.* at 6.) Petitioner lived in a series of foster homes, group homes, placements, and shelters, and ultimately was committed to the Maine Youth Center at age 16, at which location he resided for approximately 18 months. (*Id.* at 6-7.)

Petitioner argued in the memorandum for mitigation based on his personal and family history and his long history of serious mental health issues. (*Id.* at 8-10.) In particular, he argued for a sentence of 151 months, which was the low end of the guidelines range. (*Id.* at 9.)

At the sentencing hearing, the Court found Petitioner competent to be sentenced. (Sentencing Tr., ECF No. 137 at 3-4.) Counsel argued extensively at sentencing for mitigation based on Petitioner's significant and long-standing mental health issues. (*Id.* at 16-20, 22-23.) In Petitioner's allocution, he attributed his behavior to his drug addiction. (*Id.* at 24.) He said, "I knew what I was doing was wrong and I apologize for that." (*Id.*)

---

[3] According to the presentence investigation report, the injury to Petitioner's small intestine occurred as a result of a 2006 auto accident. (Revised Presentence Investigation Report at ¶ 92A.)

The Court made the following guideline calculations: the base offense level was 23 for two of the offenses and 25 for the other three. (*Id.* at 26.) The Court adjusted upward for Petitioner's status as a career criminal and downward for his acceptance of responsibility, for a total offense level of 29. (*Id.*) The Court found a criminal history category of VI, which, together with the total offense level of 29, yielded an advisory guidelines sentencing range of 151 to 188 months. (*Id.*) After considering the sentencing factors pursuant to 18 U.S.C. § 3553(a), the Court imposed a sentence of 180 months in prison on each of the counts, to be served concurrently, followed by three years of supervised release on each of the counts, to be served concurrently. (*Id.* at 28.)

In Petitioner's section 2255 motion and accompanying attachments, he asserts that he has long had psychotic episodes during periods when he was not on anti-psychotic medication. (Motion, ECF No. 126 at 2.) He alleges specifically that as a youth, he was diagnosed with schizophrenia and schizoaffective disorder, he had symptoms of auditory and visual hallucinations, and he was treated with anti-psychotic medications, mood stabilizing drugs, and anti-depressants. (Attachments, ECF No. 126-1 at 1-2; ECF No. 126-2 at 7.)

Petitioner asserts that the presentence investigation report failed to include that he was treated with anti-psychotic drugs or that he was subject to relapse in the absence of medication. (ECF No. 126-1 at 2.) He alleges that counsel failed to investigate the reasons for each of Petitioner's various medications, failed to challenge the presentence investigation report, failed to consider an insanity defense, and failed to engage experts. (*Id.* at 3; ECF No. 126-2 at 8.) Petitioner alleges that the prosecution and the Probation Office failed to disclose material facts regarding Petitioner's mental health treatments. (ECF No. 126-2 at 7.)

Petitioner also claims that counsel failed to advise him of the elements of the crimes and, therefore, Petitioner's plea was not voluntary and knowing. (ECF No. 126-2 at 10.) Petitioner

7

alleges that counsel told him that his lack of memory of the crimes would not have any effect on the case, and that Petitioner's report that he was without medication after he was released from prison would not be relevant. (Attachment, ECF No. 126-3 at 1.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). To the extent that a petitioner asserts a claim of ineffective assistance of counsel, he or she "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). As for the "cause" test, the court must be "a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'" *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was

"'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).

A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954).

## B. Grounds Asserted and Analysis

### 1. Claims of failure to investigate Petitioner's history of mental illness, failure to assert an insanity defense, and failure to obtain expert testimony on mental illness

Petitioner alleges that counsel failed adequately to investigate Petitioner's case, particularly the facts regarding Petitioner's alleged history of psychosis, that counsel failed to obtain an expert psychiatrist and an expert pharmacologist to testify about Petitioner's history of mental illness and medications, and that counsel failed to assert an insanity defense. (Motion at 2; Attachments, ECF Nos. 126-2 at 4-6, 126-3 at 2.) Petitioner maintains that he told counsel that during the period when the robberies occurred, Petitioner was not taking any prescribed medications, and that "after 4 to 5 days without medications [Petitioner] experiences delusions [and] auditory and visual hallucinations, leading to psychotic episodes." (Attachment, ECF No. 126-2 at 5.)

9

Other than Petitioner's unsupported assertions, the record contains no evidence that Petitioner had been diagnosed with psychosis or that he was prescribed medication specifically for psychosis. Petitioner asserts that staff at the Jackson Brook Institute (now known as Spring Harbor Hospital) diagnosed Petitioner with schizophrenia when he was a patient there at various times from 1992 to 1995. (Attachment, ECF No. 126-1 at 1.) Although the Probation Office obtained records for Petitioner's admissions at Jackson Brook Institute, the presentence investigation report does not reflect that Petitioner was diagnosed with schizophrenia or that he was prescribed medication for schizophrenia. (Revised Presentence Investigation Report at ¶ 93.) Petitioner also alleges that he was later diagnosed while at Jackson Brook Institute as suffering from schizoaffective disorder. (Attachment, ECF No. 126-1 at 2.) Neither the presentence report, nor any portion of the record reflects that Petitioner was diagnosed with schizophrenia or schizoaffective disorder.

Perhaps more significantly, regardless of Petitioner's history of mental illness, Petitioner was not likely to succeed with an insanity defense, because his modus operandi for the crimes negated any reasonable possibility that he could satisfy his burden to establish the basis for his insanity defense by clear and convincing evidence. *See* 18 U.S.C. § 17.[4] Petitioner attempted to conceal his identity; he brandished a weapon; he demanded money, and at the bank, he demanded "no dye pack." (Prosecution Version at 1-3.) At the store that he robbed, he told the sales clerk

---

[4] Title 18 U.S.C. § 17, which governs the defense of insanity in federal prosecution, states:

> **(a) Affirmative defense.** It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
>
> **(b) Burden of proof.** The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

10

to lie on the floor while he exited the store. (Revised Presentence Investigation Report at ¶ 8.) Petitioner chose one of the credit unions by location in order to avoid committing all of the robberies close to his home. (*Id.* at ¶ 11.) Petitioner also attempted to conceal the crimes after the fact; and he bragged to his co-defendant after one of the robberies, saying, "see, I told you I could get some money." (*Id.* at ¶ 8.) Petitioner admitted that he observed at one of the robberies that the teller was "so scared that [he] worried she might have a heart attack." (*Id.* at ¶ 10.) Petitioner's words and actions demonstrate that Petitioner was fully able "to appreciate the nature and quality or the wrongfulness of his acts," and, therefore, Petitioner would have been unable to satisfy the requirements of an insanity defense. 18 U.S.C. § 17. Without any evidence to support a successful prosecution of an insanity defense, Petitioner cannot establish that counsel was deficient for failing to pursue an insanity defense or for failing to secure expert testimony to support an insanity defense. *See Tse*, 290 F.3d at 465.

Finally, given that the presentence investigation report and Petitioner's sentencing memorandum include detailed information about Petitioner's mental health history, the Court had substantial information about Petitioner's mental health issues at the time of sentencing. Petitioner has presented no evidence, nor a convincing argument to suggest that an expert witness would have provided information that would have produced a different result at sentencing. Petitioner, therefore, cannot establish that he was prejudiced by counsel's decision not to present expert testimony at sentencing.

   **2. Claims regarding the plea**

Petitioner claims that his plea was not knowing and voluntary because counsel failed to advise him about the elements of the charged crimes. (Attachment, ECF No. 126-2 at 10.) He alleges that because counsel failed adequately to advise him, he had no choice but to plead guilty.

(Attachment, ECF No. 126-3 at 2.) Petitioner also arguably contends that his plea was not knowing and voluntary due to his mental illness, and counsel's failure to investigate Petitioner's history of mental illness. Petitioner alleges that he "was provided various forms of mood stabilizing drugs and antipsychotic medications" prior to the plea hearing, and that "what occurred with [counsel] is vague," but that Petitioner "finally conceded to make a plea to all charges."[5] (Attachment, ECF No. 126-1 at 3.) He then states that "the various drugs supplied by the jail facility were clearly to allow [Petitioner] to maintain lucid thoughts and preclude any psychotic episodes, in the course of the proceedings and while in the custody of the detaining facility." (*Id.*)

Before accepting a plea, the Court may place the defendant under oath; address him personally in open court; and inform him of and determine that he understands his rights, the waiver of those rights, the charges, the range of possible penalties, and the Court's sentencing obligations. Fed. R. Crim. P. 11(b). "This rule exists 'to ensure that a defendant who pleads guilty does so with full comprehension of the specific attributes of the charge and the possible consequences of the plea.'" *United States v. Jones*, 2015 WL 727969, at *3; 2015 U.S. App. Lexis 2630, at *8 (1st Cir. Feb. 20, 2015) (quoting *United States v. Ramos-Mejía*, 721 F.3d 12, 14 (1st Cir. 2013) (quotation marks omitted)). "Rule 11 addresses three 'core concerns': '1) absence of coercion; 2) understanding of the charges; and 3) knowledge of the consequences of the guilty plea.'" *United States v. Kenney*, 756 F.3d 36, 45 (1st Cir. 2014) (quoting *United States v. Cotal-Crespo*, 47 F.3d 1, 4 (1st Cir. 1995)). "A guilty plea is valid as long as the decision was based on 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Panzardi-Alvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989) (quoting *Hill v. Lockhart*,

---

[5] In August 2012, Petitioner filed a motion to appoint new counsel. (Motion, ECF No. 85.) At a hearing on the motion, however, Petitioner withdrew the motion. (ECF No. 89.) The plea hearing was held in October 2012. (Plea Tr., ECF No. 144 at 1.)

12

474 U.S. 52, 56 (1985)). The First Circuit has held that "[c]ompetence to enter a guilty plea is determined by the same criteria as those governing competence to stand trial: whether the defendant is able to understand the proceedings and assist his counsel with a reasonable degree of rationality." *United States v. Morrisette*, 429 F.3d 318, 322 (1st Cir. 2005).

"'The burden is upon [Defendant], as the one attacking the plea, to show the circumstances justifying relief from the plea . . . .'" *United States v. Varela-Rivera*, 551 F. App'x 583, 587 (1st Cir. 2014) (quoting *United States v. Padilla-Galarza*, 351 F.3d 594, 598 (1st Cir. 2003)). "Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea. They are more likely to be reliable than later versions prompted by second thoughts, and guilty pleas−often in the defendant's interest−could hardly be managed any other way." *Padilla-Galarza*, 351 F.3d at 598 (citation omitted). A defendant's responses to the Court's questions during a plea colloquy "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (quoted in *United States v. Kenney*, 756 F.3d at 48). A "petitioner must present valid reasons why he should be relieved of his statements at a Rule 11 hearing in order to 'overcome the presumption of regularity which the record . . . imports.'" *Ouellette v. United States*, 862 F.2d 371, 374 (1st Cir. 1988) (quoting *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

To the extent that Petitioner alleges that his plea was not knowing and voluntary because counsel failed to inform him of the charges, the claim fails. Petitioner told the Court during the plea colloquy that he received a copy of the second superseding indictment, that he had sufficient time to review it with counsel, and that counsel explained what the Government must prove in order to convict Petitioner of the crimes. (Plea Tr. at 7.) In addition, counsel told the Court that he was satisfied that Petitioner understood the nature of the offenses. (*Id.*) Petitioner's allegations in this proceeding do not rebut the presumption of verity that attaches to his statement during the

plea colloquy that counsel informed him about the charges. Petitioner provides no "'valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s].'" *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) (quoting *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975); *overruled on other grounds by United States v. Whitley*, 759 F.2d 327, 331 (4th Cir. 1985)).

To the extent that Petitioner alleges that his plea was not knowing and voluntary due to his mental illness, the allegation is not supported by the record. Petitioner told the Court that he was taking one psychiatric medication, and that this medication did not interfere with his ability to understand the proceedings or make a rational decision.[6] (Plea Tr. at 4-5.) The Court found Petitioner competent to enter a plea. (*Id.* at 5.) Petitioner's section 2255 allegations do not overcome the presumption of verity that attaches to his statements at the plea colloquy that his medication did not interfere with his ability to comprehend the proceedings and to make a rational decision. *See Butt*, 731 F.2d at 80.

Because Petitioner's claim that his plea was not knowing and voluntary fails on the merits, Petitioner's related claim of ineffective assistance of counsel concerning the voluntariness of the plea also fails. *See Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002).

### 3. Claim of failure by the Government and Probation Office to obtain and disclose records

Petitioner essentially argues that the prosecution committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) because it failed to provide medical records that he asserts would

---

[6] The Court's order that Petitioner "identify every prescription medication he is taking and to specify the dosage and frequency, purpose and effects of the medication," is a standard order that may be issued prior to a plea hearing under Fed. R. Civ. P. 11. This order is not evidence of whether a defendant is competent to enter a guilty plea, nor is it evidence of whether counsel's performance was constitutionally deficient.

14

have contained information about a history of psychosis.[7] (Attachment, ECF No. 126-2 at 7.) He also claims that the Probation Office, during its presentence investigation, failed to provide him with records of his psychiatric treatment. (*Id.*) In addition to alleging a failure to disclose, Petitioner alleges that the Probation Office had a duty to obtain complete medical records for Petitioner, and that it failed to obtain complete records from the schools, hospitals, and detention facilities where Petitioner was evaluated and/or treated during his youth. (Attachments, ECF Nos. 126-1 at 2; 126-2 at 6-7.)

The Government asserts that Petitioner's claims are procedurally defaulted because he did not raise them in a direct appeal. (Response 39-40.) In fact, by voluntarily dismissing his appeal, Petitioner waived any *Brady* claim. *Jones v. United States*, 248 F.3d 1158 (7th Cir. 2000) (unpublished) (holding that the petitioner was procedurally defaulted from raising a Sixth Amendment argument in a section 2255 motion because he had voluntarily dismissed his direct appeal).

Even if the Court considers the merits of Petitioner's claim, Petitioner's claim fails. Preliminarily, as explained above, Petitioner's conduct during the crime spree would have precluded an insanity defense. *See* 18 U.S.C. §17. In addition, any medical records that purportedly show that Petitioner experienced episodes of psychosis would not have been material, for purposes of a *Brady* claim, unless "a 'reasonable probability [existed] that the result of the trial would have been different' if the suppressed evidence had been disclosed." *United States v. Paladin*, 748 F.3d 438, 444 (1st Cir. 2014) (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)

---

[7]The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The First Circuit has held that "[t]o establish a *Brady* violation, 'a defendant must make three showings. The evidence at issue (whether exculpatory or impeaching) must be favorable to the accused; that evidence must have been either willfully or inadvertently suppressed by the government; and prejudice must have ensued.'" *United States v. Alverio–Meléndez,* 640 F.3d 412, 424 (1st Cir. 2011) (quoting *United States v. Mathur,* 624 F.3d 498, 503 (1st Cir.2010)) (quotation marks omitted).

(quotation marks omitted)). In this case, Petitioner has presented no evidence to suggest that the Government suppressed any of Petitioner's medical or other records, nor does the record contain evidence to support an argument that a trial would have produced a different result if additional medical records were located and produced.

Finally, neither the Government nor the Probation Office had an affirmative duty to conduct a search of Petitioner's medical records for evidence of psychosis. As to the Government, "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010) (quotation marks omitted); *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996). In addition, Fed. R. Crim. P. 32 provides that the probation officer is to conduct the presentence investigation at the Court's direction and submit its report to the Court. (Plea Tr. at 17.) Rule 32, however, does not require the Probation Office to conduct the search in a particular manner, or to obtain any specific or particular records.[8]

### III. CONCLUSION

Based on the foregoing analysis, no evidentiary hearing is warranted under Rule 8 of the Rules Governing Section 2255 Cases. The recommendation is (1) that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255, and (2) that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

---

[8] Notwithstanding the lack of any duty owed to Petitioner, the Probation Office in this case sought treatment records from a number of providers, and it indicated whether records were available or not in each instance. (Revised Presentence Investigation Report at ¶¶ 92-97A.) That the search by the Probation Office did not reveal medical records that reflected that Petitioner was subject to periods of psychosis is not surprising, given that the evidence of Petitioner's conduct during the crimes was inconsistent with an insanity defense, and Petitioner did not mention psychosis during the plea colloquy or in his allocution.

16

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 11th day of March, 2015.