UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  No. 2:12-cr-00030-JAW-1 |
| | ) |
| PAUL SANS | ) |
| | ) |

**ORDER ON MOTION FOR CLARIFICATION OF TIME ALLOWED IN HALFWAY HOUSE**

An incarcerated defendant asks the court to clarify his entitlement to an earlier transfer to a halfway house prior to his release and further moves for habeas corpus relief. The government opposes his transfer request as a lawful decision made within the Bureau of Prisons' discretion and asserts this district lacks jurisdiction to hear his habeas claim as it is not the defendant's present district of confinement. The court concludes the defendant has no statutory right to date-certain transfer to a halfway house, and that the court lacks jurisdiction over a habeas claim. The court dismisses the motion.

**I.    BACKGROUND**

A federal grand jury indicted Paul Sans on March 14, 2012 on one count of bank robbery. *Indictment* (ECF No. 23). On April 25, 2012, a first superseding indictment added a charge of aiding and abetting bank robbery against his co-defendant[1], *Superseding Indictment* (ECF No. 35); then, on July 25, 2012, a second

---

[1] Maria Mattson was charged in the superseding indictment with aiding and abetting bank robbery. *Superseding Indictment* at 1-2; *see also United States v. Mattson*, 2:12-cr-30-GZS-02; *United States v. Mattson*, 2:12-cr-131-GZS.

superseding indictment added charges against Mr. Sans of interference with commerce by robbery, conspiracy to commit bank robbery, and three additional counts of bank robbery. *Second Superseding Indictment* (ECF No. 67). Mr. Sans pleaded guilty to all four counts of bank robbery and the interference with commerce by robbery count on October 17, 2012. *Min. Entry* (ECF No. 96).

On February 12, 2013, United States District Judge George Z. Singal[2] sentenced Mr. Sans to an imprisonment term of 180 months on each count of bank robbery and interference with commerce by robbery, to be served concurrently; three years of supervised release on each count, to be served concurrently; restitution in the amount of $19,161.00, to be joint and several with his co-defendant; and a cumulative special assessment of $500.00. *J.* (ECF No. 118).

On October 21, 2024, Mr. Sans sent a letter to the District of Maine Clerk of Court, which the Clerk designated as a motion for clarification or appeal of time allowed in halfway house. *Mot. for Clarification (Appeal) of Time Allowed in Halfway House* (ECF No. 225) (*Def.'s Mot.*). In his letter, Mr. Sans asserted that he was "suppose[d] to go to the halfway house in Portland[,] Maine Sep[tember] 16[,] 2024 but due to beds not being open [he] was giv[en] one month and 22 days," adding that he has earned 305 days towards time in a halfway house and 365 days off his sentence but the Bureau of Prisons (BOP) "won't let [him] apply his days because [he] scored a high." *Id.* at 1. Furthermore, he argues that, under the Second Chance Act, an

---

[2] By October 21, 2024, Judge Singal was no longer presiding over criminal cases, and on that date, the Clerk's Office randomly assigned Mr. Sans's case to this Judge.

2

inmate who has been incarcerated for more than ten years "is suppose[d] to be put in [a halfway house] for one year" and insists "he needs to get more time at the halfway house to be [integrated] back into his community." *Id.*

Along with his letter to the Clerk of Court, Mr. Sans attached a letter addressed directly to the Court making similar requests, claiming that "[his] unit team put [him] in for nine months [at a] halfway house and really it should [have] been one year because of the Second Chance Act [and] First Step Act." *Id.*, Attach. 2, *Def.'s Letter to Ct.* at 1. He again explains he has earned 305 days of time in a halfway house and 365 days toward his release from prison but submits "the prison won't let [him] use them." *Id.* Mr. Sans emphasizes that he has spent thirteen years in prison, such that a month and twenty-two days in a halfway house would leave him unprepared to reenter society. *Id.* He argues "the petitioner is entitled to federal habeas corpus relief under 28 U.S.C. § 2241" and adds "the halfway house didn't grant [him] the time allowed [of] six months or ten percent of [his] sentence under 18 U.S.C. § 3624(c)." *Id.*

The Government opposed Mr. Sans's motion on November 12, 2024, submitting that Mr. Sans failed to exhaust his administrative remedies prior to filing his motion with the Court and further that transfer to a halfway house is a discretionary decision made by BOP and not subject to judicial review. *Gov't's Resp. to Def.'s Mot. Concerning Halfway House* at 1 (ECF No. 226) (*Gov't's Opp'n*). The Government explains that "[the Defendant's] most recent Program Review shows that he has been recommended for a [Residential Reentry Center (RRC)] placement in April 2025,

3

prior to his Good Time Credit (GCT) release date in June 2025." *Id.* at 2. However, the Government points out that the record "reflects that he has not filed any requests for administrative remedy" with respect to this request. *Id.*

The Government proffers that "[f]ederal law vests discretion in the BOP where to designate a prisoner's place of imprisonment, and that decision is not reviewable by any court," *id.* (citing 18 U.S.C. §3621(b)), and argues federal precedent has held there is no constitutional right to be confined in any particular place. *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996)). Instead, the Government argues, an incarcerated defendant "must exhaust any administrative remedies with the BOP." *Id.* at 2-3 (citing 28 C.F.R. § 542.10-16; *United States v. Smith*, No. 2:10-cr-00154-JDL, *Order on Def.'s Mot. for Judicial Recommendation to BOP* at 1 (ECF No. 34)). The Government emphasizes that the determination on placement is a discretionary decision by BOP based on numerous factors, and that "[o]nly the BOP has the statutory authority to make the necessary assessment of whether to transfer [a] defendant to home confinement." *Id.* at 3 (quoting *United States v. Nygren*, 1:16-cr-00106-JAW, 2020 U.S. Dist. LEXIS 129493, at *2 n.2 (July 22, 2020) (in turn citing *United States v. Williams*, 3:14-cr-00217-RJC-DCK, 2020 U.S. Dist. LEXIS 118422, at *8 (W.D.N.C. July 7, 2020) (citation revised))).

Quoting this Court's opinion in *United States v. Sirois*, the Government posits:

> There is nothing in the plain text of 18 U.S.C. §§ 3621(b) or 3264(c) that gives inmates the right to immediate placement (up to 12 months) into a [RRC]. Section 3621(b) gives the BOP the discretion "at any time" to place an inmate into "any available penal or correctional facility" and to

4

> "direct the transfer of an inmate from one penal or correctional facility to another." 18 U.S.C. § 3621(b). . .. [Section] 3624(c) does not require placement in a [RRC]. It only obligates the BOP to facilitate the prisoner's transfer from the prison system.

*Id.* (quoting *United States v. Sirois*, No. 1:11-cr-00206-JAW-2, 2018 U.S. Dist. LEXIS 188656, at *2 (D. Me. Nov. 5, 2018) (in turn quoting *Eickleberry v. Jett*, Civil No. 11-443 (DSD/JSM), 2011 U.S. Dist. LEXIS 148318, at *26-27 (D. Minn. Dec. 7, 2011) (citation revised, emphasis in original)). The Government concludes the Court should reject Mr. Sans's request for failure to request an administrative remedy from BOP, because the BOP has exclusive jurisdiction over inmate placement and because BOP's decision is not subject to judicial review. *Id.* at 3-4.

As separate points, the Government adds that, even if the Court could consider Mr. Sans's request, the record reflects that his team recommended placement in a halfway house for nine months and that his shorter allocation was a result of lack of bed space and "scor[ing] a high." *Id.* at 4 (citing *Def.'s Mot.*; *Def.'s Letter to Ct.*). The Government submits bed availability and security designation are factors properly considered under 18 U.S.C. § 3621(b), such that BOP did not err and there is no apparent judicial relief to redress Mr. Sans's claims. *Id.* Also, the Government responds to Mr. Sans's petition for habeas corpus relief in a footnote, pointing out that a habeas petition "must be filed in the jurisdiction in which a prisoner is incarcerated, not with the sentencing court." *Id.* at 2 n.1 (citing *United States v. Sirois*, No. 1:11-cr-00206-JAW-2, 2019 U.S. Dist. LEXIS 72294, at *4-5 (D. Me. Apr. 30, 2019) (citation revised)). The Government notes that Mr. Sans is incarcerated at USP Coleman II in Sumterville, Florida, so the District of Maine lacks jurisdiction to

5

review his habeas claim. *Id.* (citing *id.*, Attach. 1, *Individualized Needs Plan - Program Review*).

Though he did not reply to the Government, Mr. Sans filed an additional letter in support of his motion on November 19, 2024, reiterating his request for the Court to "help [him] apply [his] First Step Act days off [his] sentence" and his argument that he "was put in for nine months [in a] halfway house [but he] got almost two months." *Additional Attachs.* at 1 (ECF No. 227). Mr. Sans adds that he is "due for release April 22, [2025] to [Pharos] House in Portland" and asks for "a little more time." *Id.*

## II.  DISCUSSION

On review, the Court concludes the Government's response accurately describes the state of the law applicable to Mr. Sans's request for transfer to a halfway house. Furthermore, the Court concludes Mr. Sans has not demonstrated that this Court has the jurisdiction to assess his entitlement to habeas corpus relief.

With regard to Mr. Sans's asserted entitlement to prerelease custody in a halfway house pursuant to the Second Chance Act, 18 U.S.C. § 3624, Mr. Sans is correct that this statute provides that an incarcerated individual "may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the Court" where the BOP determines "the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). However, the statutory definition of "eligible prisoners" for prerelease custody for risk and needs assessment system participants within the

6

Second Chance Act includes the requirement that the incarcerated individual "has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment." 18 U.S.C. § 3624(g)(1)(B). The record reflects that Mr. Sans's recidivism risk level is ranked "Hi[gh]." *Individualized Needs Plan - Program Review* at 4. Thus, based on the record before the Court, the Court is not satisfied that Mr. Sans qualifies for prerelease custody under the terms of this statute. While Mr. Sans asserts denying his prerelease custody based on this designation "is not right or fair," *Def.'s Mot.* at 1, the Court is obligated to follow the terms of the statute as reflective of the will of Congress, which requires that he demonstrate that he "has maintained a minimum or low recidivism risk." 18 U.S.C. § 3624(g)(1)(B).

The statute continues that "[t]he Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). Mr. Sans asserts this statute justifies his transfer to a halfway house. *Def.'s Letter to Ct.* at 1. Nonetheless, it is well-established that service of a term of imprisonment remains within the discretion of the BOP, which includes an individual's place of imprisonment.[3]   18

---

[3]   The Government submits "the inmate must exhaust any administrative remedies with the BOP." *Gov't's Opp'n* at 2. To ensure clarity, the Court notes that "administrative exhaustion" is a legal term of art that typically refers to when a defendant may, following availing him or herself of all administrative recourse, bring a claim directly in court. *See, e.g., United States v. Quirós-Morales*, 83 F.4th 79, 84 (1st Cir. 2023) (explaining, in the context of 18 U.S.C. § 3582(c)(1)(A), that "a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or

7

U.S.C. § 3621(b) ("[BOP] shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence"). The statute continues:

> Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person. Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.

*Id.*

As the precedent of this district reflects and the Government accurately cites, "[t]here is nothing in the plain text of 18 U.S.C. §§ 3621(b) or 3624(c) that gives inmates <u>the right</u> to immediate placement (up to 12 months) into a RRC." *Sirois*, 2018 U.S. Dist. LEXIS 188656, at *2 (quoting *Eickleberry*, 2011 U.S. Dist. LEXIS 148318, at *26-27) (emphasis in original)). Furthermore, "[Section] 3624(c) does not require placement in a [RRC]. It only obligates the BOP to facilitate the prisoner's transfer from the prison system." *Id.* (quoting *Eickleberry*, 2011 U.S. Dist. LEXIS

---

after thirty days have elapsed from the relevant facility's receipt of such request"). In the context of a designated place of imprisonment, even if BOP denies a defendant's request, administrative remedies remain a defendant's only recourse. 18 U.S.C. § 3621(b) ("a designation of a place of imprisonment under this subsection is not reviewable by any court").

8

148318, at *27).  The Court finds persuasive the statutory analysis in *Sirois* and *Eickleberry*, and concludes Mr. Sans lacks the statutory right to demand a transfer by the BOP to a halfway house by any specific date.

It is true that federal law allows a sentencing court to make a non-binding recommendation to the BOP that an inmate be allowed to serve a portion of his term of incarceration in a RRC.  18 U.S.C. § 3621(b); *United States v. Sirois*, No. 1:11-cr-00206-JAW-2, 2018 U.S. Dist. LEXIS 175207, at *6-7 (D. Me. Oct. 11, 2018). However, here, as the Court understands it, Mr. Sans has focused his request for a recommendation to a RRC based primarily on his view that BOP has not properly calculated his good time credit because he scored high in its assessment of his recidivism risk.  *Def.'s Mot.* at 1.  Mr. Sans has given the Court no other grounds that would allow the Court to make a recommendation to the BOP in his case.

When the Court has exercised its statutory right to make such a recommendation, it has been because the inmate has presented the Court with convincing evidence that it should do so.  *See, e.g.*, *Sirois*, 2018 U.S. Dist. LEXIS 175207, at *8-11 (discussing the inmate's history of addiction, his past performance on supervised release, congressional policy, his conduct during incarceration, the BOP's superior knowledge, and the fact his sentence contained no period of supervised release to follow his incarceration).

Motions for a judicial recommendation to BOP for RRC placement are "fact intensive."  *United States v. Sanford*, No. 1:03-cr-00053-JAW, 2021 U.S. Dist. LEXIS 182162, at *5 (D. Me. Sept. 23, 2021).  The BOP has "superior knowledge regarding

9

the Defendant," it is aware of the "availability of halfway house placement for him," it may consider "the impact of his placement on other inmates seeking similar placement," and it can assess "the significance of his disciplinary record while incarcerated." *Id.* at *1. The Court's generally favorable view of residential reentry centers in easing an inmate's adjustment from prison to society at large is balanced by the Court's concession that:

> [t]he length of time an inmate should reside in a reentry center after a period of incarceration seems . . . to fall more squarely within the BOP's penological expertise than within this Court's judicial experience. In addition, the BOP has at all times many inmates eligible for assignment to residential reentry centers and how the BOP applies the statutory criteria of 18 U.S.C. § 3621(b) among its inmates and designates them for placement in specific residential reentry centers are matters within the BOP's institutional expertise and statutory authority.

*Id.* at *5-6.

The last time a judge of this district saw Mr. Sans was on February 13, 2013, when he was sentenced to 180 months of incarceration for four counts of bank robbery and one count of interference with commerce by robbery. *J.* at 1-2. Mr. Sans robbed "three credit unions, a bank, and a store, on various dates in January and February 2012." *See Recommended Decision on 28 U.S.C. § 2255 Mot.* at 2 (ECF No. 146). By contrast, the BOP "has been [Mr. Sans's] custodian throughout this time and its knowledge of [Mr. Sans] is current." *Sanford*, 2021 U.S. Dist. LEXIS 182162 at *7. Absent more evidence, the Court is reluctant to make a specific recommendation to the BOP regarding the timing of Mr. Sans's assignment to a RRC, other than to express its generally positive view of halfway house placement for all federal inmates approaching the end of their terms of incarceration to facilitate reintegration into

society.  Of course, the Court wishes Mr. Sans well as he reenters society and hopes he will return as a productive and law-abiding citizen.

Finally, the Court concludes the Government correctly asserts that this Court lacks jurisdiction to hear any petition for habeas corpus brought by Mr. Sans pursuant to 28 U.S.C. § 2241.  Authoritative precedent makes clear that petitions for habeas corpus may only be brought in the federal district of confinement, not the district where sentence was imposed.  *See, e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *McKinney v. United States*, No. 1:18-cr-00084-JAW-3, 2022 U.S. Dist. LEXIS 100068, at *4-5 (D. Me. June 6, 2022).  Based on the return address of the envelope enclosing the present motion, and confirmed on the BOP's database, Mr. Sans is presently confined at Coleman II USP in Sumterville, Florida.  *See Def.'s Mot.*, Attach. 3, *Envelope*; Fed. BOP Inmate Locator, https://www.bop.gov/inmateloc// (last visited Jan. 29, 2025).  As Sumterville, Florida is within the Middle District of Florida, the U.S. District Court for the District of Maine lacks jurisdiction to review a habeas petition coming from this district pursuant to 28 U.S.C. § 2241.  Thus, to the extent Mr. Sans's motion seeks any habeas corpus relief, the Court is obligated to dismiss the motion.  "'Federal courts are courts of limited jurisdiction.'  Thus, jurisdictional boundaries must be scrupulously observed." *Calvary Chapel of Bangor v. Mills*, 984 F.3d 21, 30 (1st Cir. 2020) (quoting *Rhode Island v. EPA*, 378 F.3d 19, 22 (1st Cir. 2004)).

11

### III. CONCLUSION

The Court DISMISSES without prejudice, Mr. Sans's pro se Motion for Clarification of Time Allowed in Halfway House (ECF No. 225).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of February, 2025